# EXHIBIT C

# EXHIBIT 4

Case 2:18-cv-00550-JRG-RSP Document 28-8   Filed 03/01/19   Page 3 of 19 PageID #: 724
Case 1:18-cv-00158-LY   Document 56-5   Filed 03/01/19   Page 2 of 20

Drake Turner
January 15, 2019                                                      1

```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                     AUSTIN DIVISION

 3
    UNILOC USA, INC. And UNILOC   ) CIVIL ACTION NOS:
 4  LUXEMBOURG, S.A.,             ) 1:18-cv-00158,
              Plaintiffs,         ) 1:18-cv-159,
 5                                ) 1:18-cv-161,
    VS.                           ) 1:18-cv-163,
 6                                ) 1:18-cv-164,
    APPLE, INC.                   ) 1:18-cv-166, 1:18-cv-293
 7            Defendant.          ) LY

 8

 9

10      -------------------------------------------

11          ORAL AND VIDEOTAPED DEPOSITION OF

12                     DRAKE TURNER

13              TUESDAY, JANUARY 15, 2019

14                       VOLUME 1

15      -------------------------------------------

16          ORAL AND VIDEOTAPED DEPOSITION OF DRAKE

17  TURNER, produced as a witness at the instance of the

18  Defendant, and duly sworn, was taken in the above-styled

19  and -numbered cause on the 15th day of January, 2019,

20  from 9:13 a.m. to 3:25 p.m., before Natasha Duckworth, a

21  CSR in and for the State of Texas, reported by machine

22  shorthand at the offices of DLA Piper, LLP, 1717 Main

23  Street, Suite 4600, Dallas, Texas, pursuant to the

24  Federal Rules of Civil Procedure and the provisions

25  stated on the record or attached hereto.
```

Drake Turner
January 15, 2019                                             2

```
 1                    A P P E A R A N C E S

 2

 3   FOR THE PLAINTIFFS:

 4       MR. KEVIN GANNON
         PRINCE LOBEL TYE, LLP
 5       One International Place
         Suite 3700
 6       Boston, Massachusetts 02110
         Telephone:  617.456.8000
 7       Facsimile:  617.456.8100
         E-mail:  Kgannon@princelobel.com
 8

 9
     FOR THE DEFENDANT:
10
         MR. JOHN M. GUARAGNA
11       DLA PIPER, LLP (US)
         401 Congress Avenue
12       Suite 2500
         Austin, Texas 78701
13       Telephone:  512.457.7125
         Facsimile:  512.721.2325
14       E-mail:  John.guaragna@dlapiper.com

15

16   ALSO PRESENT:

17       Terry van der Hayden, videographer

18

19

20

21

22

23

24

25
```

Case 2:18-cv-00550-JRG-RSP Document 28-5 Filed 03/01/19 Page 5 of 19 PageID #: 726
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 5 of 20

Drake Turner
January 15, 2019                                                    5

```
 1      A.    Drake Lee Turner.
 2      Q.    Where do you currently work?
 3      A.    In Hermosa Beach, California.
 4      Q.    Who do you work for?
 5      A.    Uniloc Luxembourg.
 6      Q.    Is Uniloc Luxembourg your only current
 7   employer?
 8      A.    Yes.
 9      Q.    Is Hermosa Beach your physical address?
10      A.    Yes.
11      Q.    Does Uniloc Luxembourg have an office in
12   Hermosa Beach?
13      A.    No.
14      Q.    Do you work from your home?
15      A.    Yes.
16      Q.    How long have you worked for Uniloc Luxembourg?
17      A.    Since June of 2014.
18      Q.    Since June of 2014 and today, have you had any
19   other employers besides Uniloc Luxembourg?
20      A.    No.
21      Q.    What were you doing before June of 2014,
22   immediately before?
23      A.    I had my own CPA practice.
24      Q.    What is your current job title with Uniloc
25   Luxembourg?
```

Case 2:18-cv-00550-JRG-RSP Document 28-8 Filed 03/01/19 Page 6 of 19 PageID #: 727
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 7 of 20

Drake Turner
January 15, 2019                                               57

```
 1     A.   There's a name Michelle Moreland.  Again, these
 2  are signature lines.  I'm not certain they're managers,
 3  but if they are these are the names.  Erez, E-r-e-z
 4  Levy, L-e-v-y; James Palmer.  There's probably a couple
 5  of others.  I can't think of the names.
 6     Q.   So it's your testimony that there may be six
 7  managers, and you can recall four as you're sitting here
 8  today.  Mr. Etchegoyen, Ms. Moreland, Mr. Levy, and
 9  Mr. Palmer.  Is that fair?
10     A.   That sounds about right, yep.
11     Q.   Anyone else you can recall?
12     A.   I know that -- again, I see this from the
13  Uniloc Luxembourg side, and I'm very familiar with Craig
14  being on that group.  And then all the other people were
15  designated as managers from the CF Holdings side, and
16  that's the side that I'm not super familiar with.
17     Q.   Have you ever met Ms. Moreland?
18     A.   I have.
19     Q.   Do you know where she lives?
20     A.   I don't know where she lives, but I know she's
21  based out of the Fortress office in San Francisco.
22     Q.   What about Mr. Levy?
23     A.   I've met him.
24     Q.   Where does he live?
25     A.   Same answer as Michelle Moreland.
```

Case 2:18-cv-00550-JRG-RSP Document 28-5 Filed 03/01/19 Page 7 of 19 PageID #: 728
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 8 of 20

Drake Turner
January 15, 2019                                                    58

```
 1       Q.   He works out of the Fortress office in San
 2   Francisco?
 3       A.   Yes.
 4       Q.   What about Mr. Palmer?
 5       A.   Same answer as the prior two.
 6       Q.   And with regard to the other names that you
 7   couldn't recall, is it your understanding that they also
 8   work out of the Fortress offices in San Francisco?
 9       A.   I would draw that conclusion, yes.  I'll also
10   add that I'm not sure if they're managers.  They may
11   just be on a committee.
12       Q.   Whether it's a manager or committee member,
13   they have duties and responsibilities with regard to
14   Uniloc 2017.  Correct?
15            MR. GANNON:  I'm going to object.
16   Mr. Turner is here on behalf of Uniloc USA and Uniloc
17   Luxembourg.  And these -- I've been giving you quite a
18   bit of leeway asking questions with respect to Uniloc
19   2017, and this deposition is limited to venue.  Venue is
20   determined at the time of the complaint being filed,
21   which would be for the Uniloc 2017 transaction.
22       Q.   (BY MR. GUARAGNA)  Do you have the question in
23   mind, sir?
24       A.   What's the question again?
25       Q.   Whether it's a manager or committee member,
```

Case 2:18-cv-00550-JRG-RSP Document 28-8 Filed 03/01/19 Page 8 of 19 PageID
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 9 of 20 PageID #: 729

Drake Turner
January 15, 2019                                                          61

```
 1      A.    It was in 2018.
 2      Q.    And that also took place in San Francisco?
 3      A.    Yes.
 4      Q.    Who did you meet with?
 5      A.    I met with the same people I just noted as
 6   possible managers.
 7      Q.    That's Ms. Moreland, Mr. Levy, Mr. Palmer?
 8      A.    Yes.
 9      Q.    Do you remember any others who were in the
10   meeting?
11      A.    There was another individual named Yoni Shtein,
12   Y-o-n-i S-h-t-e-i-n and one or two others that I don't
13   know their names at this point.
14      Q.    Were you the only representative of Uniloc
15   Luxembourg in the meeting?
16      A.    No.
17      Q.    Who else was there?
18      A.    Craig Etchegoyen.
19      Q.    How long did that meeting last?
20      A.    45 minutes.
21      Q.    What was the nature of that meeting?
22      A.    We were discussing the potential transaction
23   that ultimately came to fruition in May of 2018.
24      Q.    Who is Mr. Shtein?
25      A.    He's a guy who works at Fortress.
```

Case 2:18-cv-00550-JRG-RSP Document 28-8 Filed 07/01/19 Page 9 of 19 PageID
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 10 of 20
 #: 730

Drake Turner
January 15, 2019
85

1  property would meet with the property manager to discuss
2  the property and repairs or, you know, any significant
3  outlays of cost or relationship or the employees of one
4  who -- of the other company that might be irritating
5  tenants, etcetera, status reports, you'd have to have
6  those meetings somewhere.
7           So typically, you know, in this case, the
8  company -- Luxembourg company being based in Luxembourg
9  and Uniloc USA being based in Texas, when the people
10 happen to be in the same place in California, it's more
11 convenient for them to meet there in California.  So it
12 was really a matter of convenience and not that it was
13 set aside as an executive location for purposes of these
14 Uniloc USA meetings or Uniloc Luxembourg meetings.  It
15 was used I guess periodically when Sean might meet with
16 Craig and discuss that relationship between Uniloc USA
17 as a service provider and Uniloc Luxembourg as the asset
18 owner.
19    Q.   So fair to say that that California location
20 was a convenient place for Uniloc people to meet?
21    A.   Yes, and Uniloc USA was paying for it so why
22 not use it.
23           MR. GUARAGNA:  We'll take five.
24           THE VIDEOGRAPHER:  We're going off the
25 record at 11:32 a.m.

Case 2:18-cv-00550-JRG-RSP Document 28-5 Filed 03/01/19 Page 10 of 19 PageID #:
Case 1:18-cv-00158-LY Document 96-5 Filed 03/01/19 Page 11 of 20
731

Drake Turner
January 15, 2019                                                    87

1  Texas?
2      A.   I will answer that in the sense that none of
3  them maintains any office.  But to the extent that any
4  of them have a Texas presence, it would be listed as the
5  Tyler, Texas location.
6      Q.   That's the only one that you're aware of?
7      A.   Yes.
8      Q.   All right.  How many employees does Uniloc USA
9  currently have?
10     A.   Four.
11     Q.   Can you list them for me?
12     A.   Yes.  The three I mentioned earlier Sharon
13 Setzler, Sarah Gallegos, and Kris K, and then there's
14 Michael Ford, is that his name, as well.  And until
15 recently, of course, Sean.
16     Q.   So who is Mike Ford?
17     A.   I've never met him, but I am aware that he is
18 an employee of Uniloc USA and performs some specialized
19 services relative to some technology and research.
20     Q.   What type of specialized services does he
21 provide?
22     A.   I'm not clear about that.
23     Q.   What type of research does he do?
24     A.   Again, not clear about that.
25     Q.   Did you attempt to figure that out for purposes

Case 2:18-cv-00550-JRG-RSP Document 26-8 Filed 03/01/19 Page 11 of 19 PageID
Case 1:18-cv-00158-LY Document 96-5 Filed 03/01/19 Page 12 of 20
#: 732

Drake Turner
January 15, 2019                                                      91

1  yes.
2     Q.   And that would include patents its asserting
3  against Apple.  Right?
4     A.   It's my -- yes, yes.
5     Q.   And Mr. Ford is currently working on that
6  platform in Roseville, California.  Right?
7     A.   He works on that in Roseville in his supporting
8  role.
9     Q.   Who does he support in that role?
10    A.   Until now it was Sean Burdick.
11    Q.   As of today he is -- withdrawn.
12         As of today, is he the only Uniloc employee
13 working on the Centurion platform?
14    A.   When you say working on it, are you meaning
15 maintaining it, developing it, adding to it, or what?
16    Q.   As of today, what is your understanding as to
17 Mr. Ford's duties and responsibilities vis-a-vis the
18 Centurion technology platform?
19    A.   I believe his responsibilities are to maintain,
20 add, and augment as Mr. Burdick may request and as Craig
21 Etchegoyen may ask Burdick to request.
22    Q.   Have you asked Mr. Ford to utilize the
23 Centurion platform for any Uniloc work?
24    A.   I have not.
25    Q.   Are you aware of Mr. Etchegoyen asking him to

Case 2:18-cv-00550-JRG-RSP Document 28-5 Filed 03/01/19 Page 12 of 19 PageID #: 733
Case 1:18-cv-00158-LY Document 96-5 Filed 03/01/19 Page 13 of 20

Drake Turner
January 15, 2019                                                    95

```
 1     A.    Yes.
 2     Q.    Okay.  When did Uniloc Luxembourg take
 3  ownership of the Centurion platform?
 4     A.    It was developed internally by Uniloc
 5  Luxembourg.
 6     Q.    Internally by whom?
 7     A.    Craig outsourced to software developers the job
 8  of developing it.
 9     Q.    Which software developers?
10     A.    I don't know the names of them.  This was
11  mostly accomplished prior to 2014 when I came on board.
12     Q.    Do you know where they were located?
13     A.    I do not.
14     Q.    Does Uniloc Luxembourg still own the Centurion
15  platform?
16     A.    No.
17     Q.    Who owns the Centurion platform?
18     A.    Uniloc 2017.
19     Q.    When did the ownership of the Centurion
20  platform shift from Uniloc Luxembourg to Uniloc 2017?
21     A.    It was part of the asset sell from Uniloc
22  Luxembourg to Uniloc 2017 in early May of 2018.
23     Q.    Is Uniloc Luxembourg still able to utilize the
24  Centurion platform now owned by Uniloc 2017?
25     A.    With permission from Uniloc 2017, I bet it can.
```

Case 2:18-cv-00550-JRG-RSP Document 28-5 Filed 03/01/19 Page 13 of 19 PageID
Case 1:18-cv-00158-LY Document 96-5 Filed 03/01/19 Page 14 of 20
#: 734
Drake Turner
January 15, 2019                                                      96

```
 1  But there would be no reason for it -- them to -- there
 2  would be no reason to ask or to be granted permission.
 3  I can't envision why they would.
 4       Q.   Is that because the activities of searching for
 5  and asserting patents is no longer within the province
 6  of Uniloc Luxembourg?
 7       A.   Yes, that's my conclusion.
 8       Q.   It's now within the province of Uniloc 2017.
 9       A.   Yes.
10       Q.   Does anyone at Uniloc USA presently have access
11  to the Centurion platform for the work of Uniloc USA?
12       A.   Now that Sean is gone, I think the answer is in
13  practice, no.  Not because it's prohibited, just because
14  it's not relevant to anyone's job description.
15       Q.   Is not relevant to Mr. Ford's job description
16  today?
17       A.   Oh, of course he has access.  Sorry.  I don't
18  think of him as having access to use it.  I think of him
19  as having access to maintain it.
20       Q.   So he maintains the platform?
21       A.   Yes.
22       Q.   Does Uniloc USA have to pay Uniloc 2017 to use
23  the Centurion platform?
24       A.   I -- if I had to guess, it's the opposite.
25  Uniloc 2017, probably we should seek to be reimbursed
```

Case 2:18-cv-00550-JRG-RSP Document 28-5 Filed 03/01/19 Page 14 of 19 PageID #: 735
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 15 of 20

Drake Turner
January 15, 2019                                                    119

```
 1      A.   Just based on my awareness of where he is at
 2 any given time in terms of if I'm calling him or talking
 3 to him or saying, hey, can we get together.  Oh, no, I'm
 4 not back to California until three weeks from now.  It's
 5 just kind of the pattern of my observations.
 6           Also I know his wife and the kids and
 7 stuff, so there's a little bit of -- I'm more aware than
 8 most.
 9      Q.   Is Mr. Etchegoyen married?
10      A.   Yes.
11      Q.   Does his family reside in Hawaii?
12      A.   Yes.
13      Q.   You mentioned he also spends time in Texas.  Is
14 that right?
15      A.   Off and on, yes.
16      Q.   In the last six months, how much time has
17 Mr. Etchegoyen spent in Texas?
18      A.   If I had to guess, he might have been here once
19 or twice.
20      Q.   I'm not asking you to guess.  Do you have an
21 understanding as to how much time Mr. Etchegoyen spent
22 in Texas in the last six months?
23      A.   In the last six months, it's -- I would have to
24 say once if -- if he had a reason to come here for a
25 deposition, but I'm not aware of any specific instance.
```

Case 2:18-cv-00550-JRG-RSP Document 28-5 Filed 03/01/19 Page 15 of 19 PageID #: 736
Case 1:18-cv-00158-LY Document 56 Filed 03/01/19 Page 16 of 20

Drake Turner
January 15, 2019                                                    120

1    Q.   You can only think of one time he's been in
2  Texas --
3    A.   Probably, uh-huh.
4    Q.   What about in the last 12 months?  Can you
5  think of any other times he's traveled to Texas within
6  the last 12 months?
7    A.   I'm not specifically aware of his Texas travels
8  off and on.  Again, he and I don't see each other that
9  much.  We just correspond by phone and by e-mail.  I see
10 him about once or twice a month in a good month for
11 about 15 minutes or an hour.
12   Q.   So if you only see him once or twice a month,
13 how confident are you in your estimate as to what time
14 he spends in Hawaii versus California?
15   A.   Much more confident than the Texas element
16 because I -- if I'm going to see him face to face,
17 generally it's going to be in California because I'm not
18 going to go to Hawaii to meet with him.  I'm in
19 California; he's in California from time to time.  So
20 I'll pay much more closer attention to his whereabouts
21 as it relates to California than anything else.
22   Q.   Okay.  Would it be a fair summary of your
23 testimony to say Mr. Etchegoyen spends more time in
24 Hawaii but not specifically more than he spends in
25 California?

Case 2:18-cv-00550-JRG-RSP Document 28-5 Filed 03/01/19 Page 16 of 19 PageID
Case 1:18-cv-00158-LY Document 96-5 Filed 03/01/19 Page 17 of 20 PageID #: 737

Drake Turner
January 15, 2019                                                121

```
 1    A.   I would say he spends meaningfully more but not
 2 significantly more.  But at the same time, he's clearly
 3 more in California than in Texas in my book.
 4    Q.   And he only comes to Texas from time to time.
 5 Correct?
 6    A.   I think as needed, yes.
 7    Q.   Okay.  Flipping over to Page 9 of Exhibit 2.
 8 It says that "Mr. Etchegoyen was also the CEO of Uniloc
 9 Luxembourg (the prior owner of Uniloc of 2017's patents)
10 and held the same responsibilities in that role as
11 well."
12           And I understand that to be referring to
13 the responsibilities from the previous sentence.  Is
14 that your understanding?
15    A.   Yes, that's how I read it.
16    Q.   Okay.  And this statement in the brief
17 indicates that Mr. Etchegoyen was the CEO of Uniloc
18 Luxembourg.  Do you understand him to still have that
19 role?
20    A.   That's a good question.  I believe he holds
21 that role effectively, but he's no longer -- let's try
22 this again.
23           In the transaction that occurred in May of
24 2018, the asset sell, Craig resigned his -- he -- I'm
25 sorry.  He signed a new employment agreement for Uniloc
```

Case 2:18-cv-00550-JRG-RSP Document 26-8 Filed 03/01/19 Page 17 of 19 PageID
Case 1:18-cv-00158-LY Document 56-5 Filed 03/01/19 Page 18 of 20
#: 738

Drake Turner
January 15, 2019                                                    164

 1     Q.   Okay.  And that's the Centurion platform we
 2  discussed earlier that Mr. Ford is responsible for
 3  maintaining.  Right?
 4     A.   For the maintenance, yes.
 5     Q.   Did he participate at all in the design and
 6  development of that?
 7     A.   No.
 8     Q.   That was all done by outside contractors.
 9     A.   Yes, before it came into the company.
10     Q.   Do you know which additional patents the
11  company acquired using the Centurion platform that are
12  referenced -- that is referenced in this document?
13          MR. GANNON:  I'm going to caution you not
14  to reveal any conversations or discussions with outside
15  counsel.
16     Q.   (BY MR. GUARAGNA)  The question was do you
17  know?
18     A.   I believe that the platform started being put
19  into use to some degree beginning in 2015, and therefore
20  all patents that were acquired since then probably had
21  some use of the platform but I don't know to the degree,
22  which the decisions made by those recommending it were
23  influenced by the platform.  But I do know that as time
24  went along, it became more and more important and that
25  allowed us to reduce the head count of people.

Case 2:18-cv-00550-JRG-RSP Document 28-5 Filed 03/01/19 Page 18 of 19 PageID #: 739
Case 1:18-cv-00158-LY Document 56 Filed 03/01/19 Page 19 of 20

Drake Turner
January 15, 2019                                                          199

```
 1  STATE OF TEXAS      )
 2  COUNTY OF DALLAS    )
 3
 4
 5           I, Natasha Duckworth, a Certified Shorthand
 6  Reporter duly commissioned and qualified in and for the
 7  State of Texas, do hereby certify that there came before
 8  me on the 15th day of January, 2019, at DLA Piper, LLP,
 9  located at 1717 Main Street, Suite 4600, Dallas, Texas,
10  the following named person, to-wit:  DRAKE TURNER, who
11  was duly sworn to testify the truth, the whole truth,
12  and nothing but the truth of knowledge touching and
13  concerning the matters in controversy in this cause; and
14  that he was thereupon examined upon oath and his
15  examination reduced to typewriting under my supervision;
16  that the deposition is a true record of the testimony
17  given by the witness.
18           I further certify that pursuant to FRCP
19  Rule 30(e)(1) that the signature of the deponent:
20           ___ was requested by the deponent or a
21  party before the completion of the deposition, and that
22  signature is to be before any notary public and returned
23  within 30 days from date of receipt of the transcript;
24           _X_ was not requested by the deponent or a
25  party before the completion of the deposition.
```

Case 2:18-cv-00550-JRG-RSP Document 268-5 Filed 03/01/19 Page 19 of 19 PageID #: 740
Case 1:18-cv-00158-LY Document 96-5 Filed 03/01/19 Page 20 of 20

Drake Turner
January 15, 2019                                                    200

1    I further certify that I am neither
2  attorney or counsel for, nor related to or employed by
3  any of the parties to the action in which this
4  deposition is taken, and further that I am not a
5  relative or employee of any attorney or counsel employed
6  by the parties hereto, or financially interested in the
7  action.
8             CERTIFIED TO BY ME on this the 28th day of
9  January 2019.
10
11
12
13  _____
    NATASHA DUCKWORTH, CSR
14  Texas CSR 8410
    Expiration Date:  12/31/21
15  US Legal Support, Inc.
    CRCB Registration No. 343
16  100 Premier Place
    5910 North Central Expressway
17  Dallas, Texas  75206-5190
    (214) 741-6001
18
19
20
21  Taxable cost of original charged to Defendant $ _____
22  Attorney:  Mr. John M. Guaragna
23
24
25