# EXHIBIT Q

# JACOBS DECLARATION

# EXHIBIT O

# (REDACTED)

# EXHIBIT C

[DOCUMENT SOUGHT TO BE SEALED]

# THIRD AMENDMENT TO
# REVENUE SHARING AND NOTE AND WARRANT PURCHASE AGREEMENT

This THIRD AMENDMENT TO REVENUE SHARING AND NOTE AND WARRANT PURCHASE AGREEMENT (this "Amendment") is dated as of May 15, 2017 (the "Third Amendment Effective Date") among Uniloc USA, Inc. a Texas corporation ("Issuer"), Uniloc Luxembourg S.A., a public limited liability company (*société anonyme*), incorporated under the laws of the Grand Duchy of Luxembourg, with registered office at 14, rue Edward Steichen, L-2540 Luxembourg, Grand Duchy of Luxembourg and registered with the Luxembourg Register of Commerce and Companies (R.C.S. Luxembourg) under number B 159.161 ("Uniloc Lux"), Uniloc Corporation PTY Limited ("Uniloc Aus") and D/A Investment Holdings LLC (together with Uniloc Lux and Uniloc Aus, the "Guarantors", and, collectively, with Issuer, the "Company" and each, a "Company"), Fortress Credit Co LLC as collateral agent (the "Collateral Agent") and the CF DB EZ LLC (which is the successor by assignment of the initial Purchaser Fortress Credit Co LLC)(as Purchaser of the Term A and Term B Notes, and together with its successors and assigns, the "Term A/B Purchaser") and CF DB EZ 2017 LLC (as Purchaser of the Term C Notes, and together with its successors and assigns, the "Term C Purchaser")(such Purchasers together with their successors and assigns, the "Purchasers"), and amends that certain Revenue Sharing and Note and Warrant Purchase Agreement between the Company, the Collateral Agent and the Purchasers as of December 30, 2014 (such Agreement amended hereby and as previously amended by that certain FIRST AMENDMENT TO REVENUE SHARING AND NOTE AND WARRANT PURCHASE AGREEMENT dated February 24, 2015, that certain SECOND AMENDMENT TO REVENUE SHARING AND NOTE WARRANT PURCHASE AGREEMENT dated as of May 27, 2016 and as may be further amended, supplemented or otherwise modified and in effect from time to time, the "Agreement").[1]

WHEREAS, on December 30, 2014, the Issuer issued to the Term A/B Purchaser $10,000,000 in original principal amount of Notes along with the Revenue Stream, and on May 27, 2016, the Issuer issued to the Term A/B Purchaser an additional ▮▮▮▮▮▮ in original principal amount of Notes, which issuance resulted in an increase in the amounts payable to the Term A/B Purchaser with respect to the Revenue Stream;

WHEREAS, all of the Note Obligations owing with respect to the Notes issued on December 30, 2014 have been paid in full other than the Termination Fee related to such Notes, and approximately ▮▮▮▮▮▮ has been paid with respect to the Revenue Stream;

WHEREAS, no principal payments or payments with respect to the related Termination Fee have been made with respect to the Notes issued on May 27, 2016, and the outstanding amount of principal with respect to such Notes as of the date hereof is ▮▮▮▮▮▮;

---

[1] Capitalized terms used and not otherwise defined in this Amendment shall have the meanings specified in the Agreement.

62201773_14

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

UNILOC_APPLE_2017_18265

"Term A Notes" means the Notes issued on December 30, 2014 in the original principal amount of ███████.

"Term A Revenue Stream Amount" means ███████.

"Term A Termination Fee" means an amount equal to ███████.

"Term A/B Priority Collateral" means the Patents to which the Company holds rights as of May 12, 2017, as set forth on Schedule I(a).

"Term A/B Purchaser" means ███████ and its successors and assigns.

"Term B Notes" means the Notes issued on May 27, 2016 in the original principal amount of ███████.

"Term B Revenue Stream Amount" means ███████ or, to the extent paid in full prior to the first to occur of (x) the acceleration of the Revenue Stream or (y) March 27, 2019, the amount set forth on Appendix II.

"Term B Termination Fee" means an amount equal to $210,000.

"Term C Notes" means the Notes issued on May 15, 2017 in the original principal amount of ███████.

"Term C Priority Collateral" means any Patents acquired, or developed by the Company, after May 12, 2017, but in any event to include those Patents set forth on Schedule I(b).

"Term C Purchaser" means ███████ and its successors and assigns.

"Term C Revenue Stream Amount" means ███████ or, to the extent paid in full prior to the first to occur of (x) the acceleration of the Revenue Stream or (y) March 15, 2020, the amount set forth on Appendix III.

"Term C Termination Fee" means an amount equal to ███████.

"Termination Fee" means, as applicable, the Term A Termination Fee, the Term B Termination Fee and the Term C Termination Fee and "Termination Fees" means all such Termination Fees.

(b)     The definition of Patents is amended and restated as follows:

"Patents" means all intellectual property of the Company, including letters Patent set forth on Schedules I(a) and Schedule I(b), whether registered in the United States or any other jurisdiction, all registrations and recordings thereof, including all re-examination certificates and all utility models, including registrations, recordings and pending applications, and all reissues, continuations, divisions, continuations-in-part, renewals, improvements or extensions thereof and the inventions disclosed or claimed therein.

(c)     The definition of Revenue Stream is amended and restated as follows:

62201773_14

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY

UNILOC_APPLE_2017_18267

prior written notice prior to making any Restricted Payment under clause (ii) above, which notice shall be accompanied by a certification setting forth the calculation of the Liquidity Reserve Amount and Excess Liquidity supporting such proposed Restricted Payment, in detail satisfactory to the Purchasers.

(o) A new Section 6.16 shall be added as follows:

"Section 6.16 Third Amendment Due Authorization and Legal Opinions. Company shall deliver to the Collateral Agent and the Purchasers customary evidence of due authorization as well as legal opinions, in customary form and otherwise in form and substance reasonably satisfactory to the Collateral Agent and the Purchasers regarding the transactions contemplated by the Third Amendment to Revenue Sharing and Note and Warrant Purchase Agreement, dated as of May 15, 2017, no later than May 26, 2017.

(p) Section 7.2.2 is amended to replace the phrase "███ of the Revenue Stream Basis (i.e., ███████ based on a Revenue Stream Basis of ███████)" with "███████"

(q) The last sentence of Section 8.1 is amended and restated as follows:

"Notwithstanding, but without limiting the foregoing, the Collateral Agent shall take direction from the Majority Purchasers and shall distribute any proceeds of the Collateral in accordance with Section 2.4, such that any proceeds of Term A/B Priority Collateral shall first be applied to satisfy the Obligations owing to the Term A/B Purchaser, as provided under Section 2.4.1, and the proceeds of Term C Priority Collateral shall first be applied to satisfy the Obligations owing to the Term C Purchaser as provided under Section 2.4.2, in each case, prior to being applied to the Obligations owing to the other Purchaser."

(r) Schedule (I)(b) hereto is added to the Agreement as Schedule (I)(b).

**Section 2.** Tax Allocations. It is the parties' conclusion and intent that the modifications to the prepayment terms of the Notes and to the calculation of the Revenue Stream reflect substantially similar economics to the Purchasers' existing rights and do not constitute substantial modifications of the Notes or the Revenue Stream. In the event that such modifications do constitute substantial modifications to the Notes and/or the Revenue Stream, the Company and the Purchasers agree that the issue prices of the Notes and/or the Revenue Stream to the extent that either or both are deemed reissued are, respectively, equal to the original purchase price of the Notes plus any amortized original issue discount and to the purchase price of the Revenue Stream.

**Section 3.** Effectiveness. The effectiveness of this Amendment is subject to:

3.01 Fully Executed Amendment. The Purchasers and the Issuer having received a fully executed copy of this Amendment.

3.02 Representations and Warranties; No Default. The representations and warranties of the Company contained in the Agreement being true and correct in all material respects, and there existing no Default or Event of Default, each on and as of such the Third Amendment Effective Date.

62201773_14

HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY                    UNILOC_APPLE_2017_18272