# EXHIBIT V

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNILOC USA, INC.; and UNILOC LUXEMBOURG, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | No. C 18-00360 WHA <br> No. C 18-00363 WHA <br> No. C 18-00365 WHA <br> No. C 18-00572 WHA <br><br> **ORDER ON MOTION TO DISMISS AND MOTION TO JOIN PARTY** |

## INTRODUCTION

Defendant accused infringer in four related patent infringement actions moves to dismiss on the basis that plaintiffs lack standing. Plaintiffs move to join a new patentee to cure any jurisdictional defect. For the reasons stated below, the motion to dismiss is **DENIED** and the motion to join is **GRANTED**.

## STATEMENT

In the four above-captioned actions, plaintiffs Uniloc Luxembourg, S.A., and Uniloc USA, Inc., asserted multiple claims for patent infringement against defendant Apple Inc. in 2017. The instant motions involve a complicated series of transactions plaintiffs used to allocate their rights in the patents-in-suit. Apple contends that these transactions left no plaintiff with constitutional standing and thus moves to dismiss for lack of subject-matter jurisdiction. The relevant facts are as follows.

Each of these waning patents issued long ago to non-party Hewlett-Packard Enterprise Development Company LP ("HP"). On May 16, 2017, HP assigned them to Uniloc

the validity of plaintiffs' patents were key to the value of Fortress's collateral, Apple argues, plaintiffs' "misrepresentation" under Section 4.5 were material, thereby producing a second event of default.

Even assuming that the above-mentioned occurrences did constitute events of default, this order finds that they were annulled under Section 7.3 of the Revenue Sharing Agreement, which provided that (Dkt. No. 134-7 § 7.3) (emphasis added):

> Once an Event of Default has occurred, such Event of Default shall be deemed to exist and be continuing for all purposes of this Agreement until the earlier of (x) Majority Purchasers shall have waived such Event of Default in writing, *(y) the Company shall have cured such Event of Default to the Majority Purchasers' reasonable satisfaction* or the Company or such Event of Default otherwise ceases to exist, or (z) the Collateral Agent and the Purchasers or Majority Purchasers . . . have entered into an amendment to this Agreement which by its express terms cures such Event of Default, at which time such Event of Default shall no longer be deemed to exist or to have continued.

That Fortress chose to execute a third amendment to the Revenue Sharing Agreement with plaintiffs on May 15, 2017 (one day before Uniloc Luxembourg acquired the HP patents) and thus made substantial additional investments — despite knowledge of plaintiffs' alleged discrepancy between the actual and target (as set forth in the agreement) revenue — indicates that plaintiffs cured the purported default for failing to reach the ████████ target revenue by March 31, 2017, to Fortress's reasonable satisfaction. Moreover, James Palmer, Managing Director in the Intellectual Property Finance Group at Fortress Investment Group, has explained in a declaration (in connection with plaintiffs' opposition) that Fortress was in fact satisfied with plaintiffs' monetization efforts at the time of the third amendment (and suggested Fortress's continued satisfaction) (Dkt. No. 141-7 ¶¶ 8–9). The same may be said for the purported default based on false representations regarding the invalidity challenges of plaintiffs' patents, as Palmer further explained that as of May 15, 2017, "Fortress was aware that Uniloc had filed a number of actions on the listed patents, and understood in all, or virtually all, of them invalidity had been, or would shortly be, asserted" (*id*. ¶ 19). Again, the fact that Fortress executed the third amendment to the agreement in spite of this knowledge and indicated its continued satisfaction with plaintiffs' performance on the contract shows that plaintiffs had cured that alleged default to Fortress's reasonable satisfaction.

6

Apple argues that the Palmer declaration is inadmissible as parol evidence, which is barred under New York law (the law governing the agreements at issue) in interpreting an unambiguous contract term. This order, however, does not rely on the Palmer declaration to interpret the contract. Rather, it relies on the Palmer declaration to find that plaintiffs had in fact cured the alleged events of default to Fortress's reasonable satisfaction. Nor does the Palmer declaration "contradict" plaintiffs' prior Rule 30(b)(6) testimony, as Apple asserts. The portion of the Rule 30(b)(6) testimony Apple points to simply states that the witness was not "aware of any instance where the majority purchasers waived an event of default in writing" under Section 7.3(x) (Dkt. Nos. 146-4 at 9; 134-10 at 89:16–19). Palmer's point, however, is that any default, if such had occurred, was *cured* under Section 7.3(y), which does *not* require the cure to be in writing. Instead, it only requires that the cure be made to Fortress's reasonable satisfaction, which the declaration confirms. Apple has not challenged the veracity of the Palmer declaration in this respect. Nor has Apple requested further discovery on this specific issue.

This order recognizes a potential difference between a cure and a waiver in Section 7.3 of the original Revenue Sharing Agreement and that the Revenue Sharing Agreement stated in Section 9.4.2 that "[n]o course of dealing between the Purchasers and the Company shall operate as a waiver of any Purchaser's rights under this Agreement" (Dkt. No. 146-7 § 9.4.2). Under these circumstances, however, Fortress's conduct *and* representations in the Palmer declaration can only be understood as excusing of the purported default(s) — amounting to a cure — by Fortress.

This order therefore finds that no relevant event of default existed at the time plaintiffs filed the suits. As such, Fortress could not have exercised its right to sublicense the patents-in-suit to Apple. Accordingly, plaintiffs had initial standing to sue.[2]

---

[2] There is no clear cut Federal Circuit authority on whether or not the grant of a nonexclusive license with an unfettered right to sublicense destroys a patent owner's standing to enforce the patent. On the one hand, power to sublicense by a third party nonexclusive licensee would seem to eliminate the patentee's authority to exclude anyone from practicing the patent, given that the nonexclusive licensee could always grant a sublicense to an accused infringer. *Cf. WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1265–66 (Fed. Cir. 2010) ("[T]he touchstone of constitutional standing in a patent infringement suit is whether a party can establish that it

7

### B. Uniloc 2017 Has Standing.

It is undisputed that Uniloc Luxembourg transferred all of its interest in the patents-in-suit to Uniloc 2017 after commencement of this suit and therefore no longer has standing. As such, plaintiffs move to add Uniloc 2017 as a party to the above-captioned actions to re-establish subject-matter jurisdiction (as further discussed below). Apple argues, however, that the addition of Uniloc 2017 is still insufficient to restore jurisdiction. That is, the allocation of patent rights in various agreements involving Uniloc 2017, Uniloc USA, and CF Uniloc, according to Apple, ultimately deprived both Uniloc 2017 and Uniloc USA of standing because Uniloc 2017 (1) relinquished its right to sue and recover damages, and (2) lacks substantial rights in the patents-in-suit (Dkt. No. 134-4 at 18–21).

In May 2018, Uniloc 2017 granted Uniloc USA only the bare right to sue — without any exclusionary rights in the patents-in-suit (which Uniloc 2017 retained) (Dkt. No. 134-18 §§ 2.1–2.4). This, Apple contends, is similar to *Morrow* — where the United States Court of Appeals for the Federal Circuit found that the plaintiff had only the bare right to sue and therefore lacked standing — and subsequent district court rulings determining that a patentee that has relinquished its right to sue also lacks standing. 499 F.3d at 1342–43; *see also Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 630 F. Supp. 2d 365, 371 (D. Del. 2007) ("Intersil contracted away its right to sue Power Integrations to Fairchild. That Fairchild lacks standing to take advantage of that right does not mean that Intersil regains it."). Apple further argues that Uniloc 2017 also lacks standing based on the assertion that "it gave up substantial rights to enforce the patents to CF Uniloc," such as the ability to freely assign the patents-in-suit or settle litigation (Dkt. No. 134-4 at 19–20).

Though plaintiffs oppose Apple's assertions, they have nevertheless responded by removing the very issues that Apple contends divest Uniloc 2017 of standing. Specifically, in

---

has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury. . . . [A]n exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it.").

On the other hand, if the standing of a patent owner was eliminated for this reason, then no one would have standing to sue. This problem has not been squarely addressed by the United States Court of Appeals for the Federal Circuit. It, however, need not be resolved in the instant case based on this order's ruling.

8

**CONCLUSION**

For the foregoing reasons, Apple's motion to dismiss is **DENIED** and plaintiffs' motion to join Uniloc 2017 is **GRANTED**.

The Court suspects that Uniloc's manipulations in allocating rights to the patents-in-suit to various Uniloc (possibly) shell entities is perhaps designed to insulate Uniloc Luxembourg from any award of sanctions in the event Uniloc loses this litigation (or some substantial part thereof). Therefore, Uniloc Luxembourg shall remain in the above-captioned actions for the purpose for any sanction award if and when such a sanction award would be warranted and for purposes of facilitating any reasonable discovery against Uniloc Luxembourg.

**IT IS SO ORDERED.**

Dated: January 17, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE